17397

Janie M. CAIN, Appellant, v. UNITED INSURANCE COMPANY, Respondent

(102 S. E. (2d) 360)

*James Hugh McFaddin,* Esq., of Manning, *for Appellant,*

*John G. Dinkins,* Esq., of Manning, *for Respondent,*

March 5, 1958.

OXNER, Justice.

On March 9, 1953, the United Insurance Company issued a policy insuring the life of Thomas J. Cain for $240.00 in which his wife, Janie M. Cain, was designated as the beneficiary. The insured died on July 19, 1953. The Company denied liability upon the ground that the policy was procured by fraudulent misrepresentations. Thereafter this action was brought by the beneficiary to recover actual and punitive damages for an alleged fraudulent breach of the insurance contract. The trial resulted in a verdict for plaintiff for $240.00 actual damages and $1,750.00 punitive damages. The presiding Judge later concluded that he erred in not granting defendant's motion for a directed verdict upon the ground that the policy was obtained by false representations in the application. He accordingly set aside the verdict of the jury and directed that judgment be entered in favor of the defendant.

The application for the policy was taken by two agents for the Company at the home of the insured on March 4, 1953. The questions were read to the insured by one of the agents and answers inserted as given by him. After the application was completed, the insured instructed his daughter, Gwendolyn, to sign his name to it.

The Company contends that the answers to the following questions were false and made with intent to deceive:

"8. Are you in good health?

"Yes.

"9. How many times have you been confined to the house or hospital by sickness, disabled by accident or received medical, surgical or clinic treatment within the past two years? (State dates and nature of disability.)

"None."

The policy was issued without medical examination in reliance upon the information given in the application. About four and a half months later insured died in Columbia at the Veterans Hospital. In due course proof of death was filed by the beneficiary. Included was a statement by Dr. Robert W. Houseal, Chief, Professional Services at the Veterans Hospital, which gave as the cause of death "cerebral hemorrhage due to hypertensive cardiovascular disease." The medical history in this statement further disclosed that insured was admitted to the Veterans Hospital on September 17, 1952, and discharged November 8, 1952, receiving treatment for disease of the heart, and was also confined in the same hospital for heart disease from March 29, 1951 to April 13, 1951.

Upon receipt of the foregoing information, the manager of the district office at Florence promptly instructed the agent to deny liability and refund the premiums. In accordance with this instruction, the agent called at the Cain home on October 14, 1953 and refunded all premiums paid, amounting to $10.00, to the beneficiary's daughter, Gwendolyn Cain, then about 25 years of age, and the person who

usually paid the premiums on this and other policies which the Company carried on various members of the Cain family. The beneficiary is a school teacher and was rarely at home when the agent called.

There is no evidence that when the Company issued this policy it had any knowledge or reason to believe that the insured had heart trouble or had ever been confined in the Veterans Hospital for this or any other disease. It is also clear that the application would not have been accepted had the true facts been disclosed. The only reasonable inference warranted by the evidence is that the policy was procured by fraudulent misrepresentations. Assuming that the insured did not know that he had a serious heart condition, he certainly knew that within the past two years he had received medical treatment at the Veterans Hospital. This material fact could not have escaped his attention and we can only infer from his negative answer to question 9 that he intended to deceive the Company.

Under the facts presented, which are undisputed, the Court below was clearly correct in holding that the Company was entitled to avoid the policy for false representations in the application. *Robinson v. Pilgrim Health & Life Insurance Co.,* 216 S. C. 141, 57 S. E. (2d) 60; *Reese v. Woodmen of World Life Insurance Society,* 221 S. C. 193, 69 S. E. (2d) 919; *Arnold v. Life Insurance Co. of Georgia,* 226 S. C. 60, 83 S. E. (2d) 553; *Phillips v. Life & Casualty Ins. Co. of Tenn.,* 226 S. C. 336, 85 S. E. (2d) 197.

It is argued that a jury should be permitted to determine whether the insured gave the answers in this application. But the positive testimony of the two agents that the insured furnished the answers is uncontradicted. Although two adult daughters of the insured were present when the application was taken and attended the trial, they were not offered as witnesses by the plaintiff.

It follows from the foregoing that the cause of action ██ for fraudulent breach of contract, which is regarded under our decisions as an action *ex contractu,* *Broome v. Travelers Insurance Co.,* 183 S. C. 413, 191 S. E. 220, must fail. *Cp. Babb v. Paul Revere Life Insurance Co.,* Worcester, Mass., 224 S. C. 1, 77 S. E. (2d) 267. To sustain such a cause of action it is essential that there be a valid contract. Since the insurance policy upon which this action is based was procured by fraud, plaintiff can have no cause ·of action for the breach of it.

Plaintiff claims that shortly after the death of the ██ insured the agent of the Company improperly obtained possession of the policy and receipt book and thereafter refused to return them, and that the Company undertook to cancel the contract before it received the information upon which it later sought to avoid the policy. But these facts, if proved, would not vitalize the insurance contract or be of any aid in establishing a cause of action for the breach of it. The question of punitive damages would not arise until after the plaintiff had shown the right to actual damages for breach of the policy. Although this is not an action for fraud and deceit, it may not be amiss to say that there is nothing in this record to show that the plaintiff has been defrauded.

The judgment *non obstante veredicto* is affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ.. concur.